UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ANTUANE MEANS,

                                                   Plaintiff,

   v.                                                       9:17-CV-746
                                                                   (BKS/ATB)

JARED OLMSTED et al.,

                                                  Defendants.

---

ANTUANE MEANS, Plaintiff, pro se
DAVID A. ROSENBERG, Asst. Attorney General, for defendants.

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT and RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge. Presently before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 42). Plaintiff has responded in opposition to the motion, and the defendants have filed a reply. (Dkt. Nos. 44, 47). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## I. Procedural History

Plaintiff signed his complaint on June 26, 2017. (Complaint ("Compl.") at CM/ECF p.11)[1] (Dkt. No. 1). The action was received by the court and filed on July 10, 2017. (Dkt. No. 1). The case was administratively closed due to plaintiff's failure to

---

[1] Although plaintiff has used a form-complaint for this action, he has also inserted additional pages in between the numbered pages of the form. Thus, the court will cite to the page of the complaint as assigned by the court's electronic filing system (CM/ECF).

properly complete his application to proceed in forma pauperis ("IFP"). (Dkt. No. 4). The case was reopened on August 2, 2018, after plaintiff complied with the court's direction to correct the IFP application, and on September 6, 2017, Judge Sannes issued an order after an initial review of the complaint. (Dkt. No. 9). In Judge Sannes's order, she granted plaintiff's application to proceed IFP, and allowed plaintiff's Eighth and Fourteenth Amendment claims against defendants Jolsten and C.O. Doe to proceed, directing that the defendants file an answer. (*Id.*)

The claims against defendants "Jolsten" and "Doe" involve a challenge to their treatment of plaintiff when they escorted him on a hospice trip to visit his mother from Coxsackie Correctional Facility ("CCF") to Staten Island, New York. (Compl. at p.5, 7-8). Judge Sannes issued an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997), directing defendants to assist plaintiff in ascertaining the name of the John Doe defendant, who was one of the officer-escorts on the hospice trip. (Dkt. No. 9 at 8-9). Judge Sannes dismissed the remaining claims against the remaining defendants - Ms. Tolomeo, Therapist and Mr. Galant, M.D. (Dkt. No. 9 at 9-10).

The dismissal against defendants Tolomeo and Galant was without prejudice, and plaintiff was directed to file an amended complaint if he wished to pursue his action against these dismissed defendants. (*Id.* at 11 n.11). Plaintiff did not amend his complaint to pursue claims against former defendants Tolomeo and Galant, but was able to correct defendant "Jolsten's" name to defendant Jared Olmsted and was able to identify and serve Corrections Officer ("CO") Bergmann, replacing the John Doe defendant. (Dkt. Nos. 15-18, 35).

Prior to service on defendant Bergmann, the defendants made a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[2] (Dkt. No. 28). I recommended denying the motion, without prejudice to filing a properly supported motion for summary judgment, containing more information regarding plaintiff's grievance. (Dkt. No. 34). My Report-Recommendation was adopted on April 9, 2018. (Dkt. No. 36). Defendant Bergmann answered the complaint on April 23, 2018. (Dkt. No. 37). Defense counsel provided plaintiff with mandatory disclosures on September 13, 2018. (Dkt. No. 40). On December 21, 2018, the remaining defendants moved for summary judgment, plaintiff responded in opposition to the motion, and defendants filed a reply. (Dkt. Nos. 42, 44, 47). The fully-briefed motion for summary judgment is before me for my review. For the following reasons, this court agrees with defendants and will recommend dismissing the complaint in its entirety.

## II. <u>Summary Judgment</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219,

---

[2] On April 2, 2018, subsequent to defendants' motion to dismiss, defendants filed an authorization to accept service of process on behalf of defendant Bergmann. (Dkt. No. 35).

3

1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## III. Exhaustion of Administrative Remedies/Statute of Limitations

### A. Legal Standards

#### 1. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not

available in prison administrative proceedings.  *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).  As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements.  *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules.  *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC").  N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b).  An adverse decision of the IGRC may be appealed to the Superintendent of the Facility.  *Id*. § 701.5(c).  Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC").  *Id*. § 701.5(d).

There is a special section for complaints of "harassment."  *Id*. § 701.8. Harassment grievances are defined in another section of the regulations as "those grievances that allege employee misconduct meant to annoy, intimidate, or harm an

5

inmate." *Id.* § 701.2(e). Based on this definition, section 701.8 has been found applicable to claims of excessive force by staff. *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *7 n.7 (S.D.N.Y. Sept. 28, 2018) (citing *Torres v. Carry*, 691 F. Supp. 2d 366, 369-70 (S.D.N.Y. 2009)).

Complaints of harassment are handled by an ***expedited*** procedure which provides that such grievances are forwarded directly to the superintendent of the facility,[3] after which the inmate must appeal any negative determination to the CORC by filing a form within seven calendar days of the inmate's receipt of the Superintendent's response. *Id.* §§ 701.8(h) & (i), 701.5. The regulations then provide that "unless otherwise stipulated in this section, all procedures, rights, and duties pertaining to the processing of other grievances as set forth in section 701.5 of this Part shall be followed." *Id.* § 701.8(i). Thus, if a procedure is not described in 701.8, the inmate must refer to section 701.5.[4]

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the

---

[3] The regulation states that "[a]llegations of employee harassment are ***of particular concern to the administrators of department facilities.***" 7 N.Y.C.R.R. § 701.8 (emphasis added).

[4] The court also notes that the regulations governing the Inmate Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id*. § 701.3(a) (Inmate's Responsibility).

exhaustion requirement. *Id.*

However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 136 S. Ct. at 1857. "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, No. 15-3336-pr, 2016 WL 4572321, at *2 (2d Cir. Sept. 1, 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill*–availability and estoppel–are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 2016 WL 4572321 at *2. An administrative procedure is "unavailable" when

> (1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1859-60).

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Ross*, __ U.S. at __, 136 S. Ct. at 1859-60. The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859. The second

7

example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.* Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860. Thus, if a plaintiff fails to exhaust his administrative remedies, the court must consider whether those remedies were "available" to him.

In *Williams v. Priatno*, 829 F.3d 118, 123-27 (2d Cir. 2016), the Second Circuit considered whether administrative remedies had been "actually available" to an inmate plaintiff under *Ross*, after the district court granted the defendants' motion to dismiss for failure to exhaust. The plaintiff alleged that, while housed in the special housing unit ("SHU"), he drafted a grievance that he delivered to a correction officer to forward to the grievance office on his behalf. *Id*. at 120-21. Approximately two weeks later, the plaintiff was transferred to a different facility. *Id*. at 121. He never received a response to his grievance, and alleged that it was never filed by the officer to whom he had given it. It was undisputed that plaintiff never appealed the grievance. *Id*.

The defendants in *Williams* argued that even if the grievance was never filed, the plaintiff was required to appeal it and complete the grievance process. *Id*. at 124. The defendants relied on a Department of Corrections and Community Services ("DOCCS") regulation that provided that "an inmate may appeal a grievance 'to the next step' if he does not receive a timely response." *Id.* (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2)).

The Second Circuit rejected this argument and held that, for an inmate in the plaintiff's situation, the regulatory scheme was so "opaque" and "confusing" as to be practically unavailable. *Id*. The Second Circuit found that DOCCS regulations "only contemplate appeals of grievances that [have been] actually filed . . . [and] give no guidance whatsoever to an inmate whose grievance was never filed." *Id*. Thus, *Williams* holds that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id*. at 126.[5] *See also Medina v. Napoli*, 725 F. App'x 51, 53-54 (2d Cir. 2018) (following *Williams* in the context of a summary judgment motion).

### 2. **Statute of Limitations**

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250–51 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action. Federal law governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d. Cir. 1999) (citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d. Cir. 1992)). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is

---

[5] My summary of *Williams* tracks that of Magistrate Judge Stewart in *Berman v. Durkin*, No. 9:13-CV-136 (LEK/DJS), 2017 WL 1215814, at *8 (N.D.N.Y. Mar. 10, 2017), (Rep't-Rec.), *adopted*, 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017).

9

the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted)). Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled. *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997).

The Supreme Court has held that an inmate's papers may be deemed "filed" at the moment of delivery to prison authorities for forwarding to the district court. *Houston v. Lack*, 487 U.S. 266 (1988). This rule became known as the "prison mailbox rule," and has been applied to inmates filing complaints for purposes of the statute of limitations. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), modified on other grounds, 25 F.3d 81 (2d Cir. 1994).

The statute of limitations is tolled while a plaintiff is exhausting his administrative remedies pursuant to the PLRA. *Gonzalez v. Hasty*, 651 F.3d 318, 323 (2d Cir. 2011). However, the statute is tolled only tolled while the plaintiff is "actively exhausting," and is not tolled between the time that the cause of action accrues and the time that plaintiff begins the administrative exhaustion process. *Id.* at 324.

In "rare and exceptional" cases, the doctrine of equitable tolling may apply to defeat an argument that the action was not timely filed. *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007). *See also Veltri v. Bldg. Serv. 32B J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004) ("Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances."). Equitable tolling allows the court to extend the statute of limitations past the time of expiration as necessary to

avoid inequitable circumstances. *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (citation omitted). In order to apply equitable tolling, the court must find that "extraordinary circumstances" prevented the plaintiff from performing the required act, and that plaintiff acted "with reasonable diligence" during the period that he seeks to toll. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (quoting *Doe v. Menefee*, 391 F.3d 159 (2d Cir. 2004)).

### B. Application

Defendants argue that plaintiff's claim is barred both by the failure to exhaust and by the statute of limitations. The hospice trip occurred, and plaintiff's claim accrued on May 30, 2014. Normally, the statute of limitations would begin to run on that date and would run until plaintiff filed his grievance. *Gonzalez*, 651 F.3d at 324. The statute of limitations would then be tolled while plaintiff was "actively" exhausting his administrative remedies, and would begin to run again when those remedies were completed until he filed his federal action. *Id.*

If as defendants claim, plaintiff never filed a grievance, the statute of limitations would have begun to run on May 30, 2014 and would have expired on May 30, 2017. Plaintiff did not even sign his complaint in this case until June 26, 2017. Thus, if plaintiff never filed a grievance, this action would be barred both by his failure to exhaust and by the statute of limitations.[6] There are no facts stated by the plaintiff that

---

[6] The statute of limitations bar would be relevant if the plaintiff attempted to exhaust his remedies after the court dismissed the action. Generally, when a plaintiff has failed to exhaust his remedies, the dismissal is without prejudice to plaintiff exhausting the grievance procedure and refiling the action after the appeal to the CORC is complete. *Greene v. Desousa*, No. 14-CV-6290, 2016 WL 3460376, at *3 (E.D.N.Y. June 21, 2016) (citations omitted); *Brown v. Napoli*, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009). However, if the statute of limitations has run, there would be no opportunity for

would justify affording equitable tolling. Plaintiff simply states that he filed his grievance, and it is not his fault that the Grievance Committee failed to answer him. However, he does not allege that he acted with "reasonable diligence" during any part of the three years that passed prior to filing this action. There is no indication that plaintiff was "actively" exhausting his administrative remedies, so equitable tolling would not apply in plaintiff's situation.

Plaintiff alleges that he filed a grievance, and he has submitted a copy of the document that he states that he filed. (Dkt. No. 1-1 at 1). However, there is no indication in the facility records that he did so or that he appealed the denial of any grievance regarding his hospice trip to the Superintendent or the CORC. As exhibits to their motion for summary judgment, defendants have submitted the declarations of Jeffrey Hale, Rachael Seguin, and Raymond Shanley. (Dkt. Nos. 42-12 - 42-15). Jeffrey Hale is the Inmate Grievance Supervisor at Coxsackie (Hale Decl. ¶ 1) (Dkt. No. 42-12), Rachael Seguin is the Assistant Director of the IGP for DOCCS (Seguin Decl. ¶ 1) (Dkt. No. 42-13), and Raymond Shanley is the current Superintendent of Coxsackie (Shanley Decl. ¶ 1) (Dkt. No. 42-15).

Supervisor Hale states that all documents related to a particular grievance, including the grievance itself, the investigations, and appeals are stored in the Coxsackie grievance office as they are created or received. (Hale Decl. ¶ 9). Supervisor Hale states that if plaintiff had filed a grievance at Coxsackie, there would be a record of the grievance in the files, maintained in the grievance office. (Hale Decl. ¶ 10).

---

plaintiff to return after exhaustion.

Plaintiff was incarcerated at Coxsackie from December 16, 2013 until June 6, 2016. (Hale Decl. ¶ 12). Supervisor Hale states that there is "no record of any grievance filed by inmate Means related to the above mentioned May 30, 2014 trip." (Hale Decl. ¶ 13). In fact, there is no record of plaintiff filing any grievances while incarcerated at Coxsackie. (*Id.*)

Assistant Director Seguin is the custodian of records maintained by the CORC. (Seguin Decl. ¶ 2). Assistant Director Seguin states that, when an inmate appeals a grievance to CORC, it is DOCCS policy to maintain records of these appeals for four years, and in accordance with that policy, the CORC database contains records of appeals of IGP grievances, including those reviewed under the expedited procedure described above. (Seguin Decl. ¶ 8). Assistant Director Seguin conducted a search of the database and found that plaintiff appealed only one grievance to the CORC, which was filed in February of 2018, and which was unrelated to the claims in this action. (Seguin Decl. ¶ 12 & Ex. A). Thus, DOCCS records reflect that plaintiff did not file a grievance nor appeal the "denial" of any grievance to the CORC during the time that he was incarcerated at Coxsackie, relating to the hospice trip. Thus, plaintiff failed to exhaust his administrative remedies, and his claims are also now barred by the statute of limitations.

As stated above, a failure to exhaust may be excused if the administrative remedy was not "available" to the plaintiff. *Williams*, 829 F.3d at 123-24. In *Williams*, the court found that the remedy was unavailable to Williams because the regulatory scheme governing Williams's situation was "'so opaque'" and "'so confusing that . . . no

reasonable prisoner can use [it].'" *Id.* at 124 (quoting *Ross*, 136 S. St. at 1859 (alterations in original)).  In *Williams* plaintiff was in disciplinary housing, he gave his grievance to an officer to file, but the grievance was never filed, and Williams was thereafter transferred out of the facility shortly thereafter. *Id.*

*Williams* was decided in the context of a motion to dismiss. 829 F.3d at 121.  In *Williams*, the court accepted as true that the officer never filed the grievance and held that the regulations did not adequately outline the process for appeal in that situation because "[o]n their face, the regulations only contemplate appeals of grievances that were actually filed, not those whose time limits never began to run because the textual provisions allowing an inmate who does not receive a response to his grievance to appeal to the "next step" would never have "come into effect." *Id.*  *Williams* has been distinguished in cases in which the plaintiff was not segregated from the population and was able to have access to the grievance sergeant. *Davis v. Grant*, No. 15-CV-5359, 2019 WL 498277, at *10 (S.D.N.Y. Feb. 8, 2019).

In *Davis*, the court found that "[p]laintiff's bare assertions that he submitted his grievances but never received a response fall squarely into the category of assertions that courts in the Second Circuit have found do not excuse the exhaustion requirement." *Id.* An "unsupported assertion" that plaintiff filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material fact." *Id.* (citations omitted). *See also Engles v. Jones*, No. 6:13-CV-6461, at *10 (W.D.N.Y. Dec. 28, 2018) ("Plaintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material

fact.") (citing *Scott v. Kastner Smith*, 298 F. Supp. 3d 545, 555 (W.D.N.Y. 2018) ("[C]ourts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement." (quotation omitted)); *Mims v. Yehl*, No. 13-CV-6405, 2014 WL 4715883, at *4 (W.D.N.Y. Sept. 22, 2014) (inmate's "unsupported statement" that he has submitted a grievance is "insufficient at the summary judgment stage"); *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) ("[An] inmate's unsupported claims that his grievances were lost at the Grievance Committee Office or destroyed by officers . . . fails to excuse [the] inmate from fully grieving remedies[.]" (citation omitted)).

This case is similar to *Davis* and the cases cited therein. The case comes to the court on a motion for summary judgment, there has been opportunity for discovery, and plaintiff has been deposed. Plaintiff was not hampered by confinement in the SHU, nor was he transferred shortly after the incident. During his deposition, plaintiff testified that he dropped the grievance in the "box" himself. (Pl.'s Dep. at 16). Plaintiff also testified that he was at Coxsackie until 2016. (Pl.'s Dep. at 10). Thus, he had ample time within which to file his grievance and within which to follow up if he failed to get a response.

He does not allege that any officer tampered with, or took, his grievance. In his complaint, plaintiff simply states that he filed his grievance, but never received any response "as normal." (Compl. at 5, 6). He has not documented, or testified to, any effort to re-submit the alleged grievance, nor does he allege that he made any inquiries about the lack of response from DOCCS. The grievance that he has attached to his

complaint is not stamped, nor does it indicate anywhere on the face of the document that it was received by the IGRC. "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then "counter" the defendant's assertion by persuading the Court of either exhaustion or unavailability." *Adams v. O'Hara*, No. 16-CV-527, 2019 WL 652409, at *4 (N.D.N.Y. Feb. 15, 2019).

In this case, defendants have properly supported their claim that plaintiff failed to exhaust his administrative remedies, and plaintiff has not substantiated his conclusory allegation that he filed a grievance with any further evidence, or even additional statements of fact that would lead the court to find that he exhausted his remedies or that the grievance program was "unavailable" within the meaning of *Ross*. Thus, this court finds that plaintiff has failed to exhaust his administrative remedies with respect to his treatment by defendants during his hospice visit, and his complaint must be dismissed.

Generally, a dismissal for failure to exhaust administrative remedies is without prejudice. *Brown v. Napoli*, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009). However, when the plaintiff is unable to exhaust his remedies because of the expiration of the time to do so, or in this case, where he is both barred at the administrative level,[7] and

---

[7] The court in *Hilbert v. Fischer*, No. 12 Civ. 3843, 2013 WL 4774731, at *7 (S.D.N.Y. Sept. 4, 2013), explained why, in circumstances essentially the same as in this case, the dismissal of plaintiff's claims for failure to exhaust, well after the DOCCS deadlines for filing grievances or requests for late filing have expired, should be with prejudice:

> [New York] [p]risoners have 21 days from the date of the alleged

16

would be barred from returning to federal court because the statute of limitations expired prior to the original filing, the complaint should be dismissed with prejudice. *See Carlton v. Annucci*, No. 9:17-CV-245, 2019 WL 422530, at *2 (N.D.N.Y. Feb. 4, 2019) (dismissing with prejudice when the failure to exhaust was incurable because it was past the deadline for bringing such a grievance through the internal grievance program).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. No. 42) be **GRANTED**, and the complaint be **DISMISSED WITH PREJUDICE IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d

---

occurrence to initiate the first formal step of the IGP, subject to exceptions "based on mitigating circumstances." 7 NYCRR §§ 701.5(a)(1), 701.6(g)(1)(i)(a). However, an exception to the time limit may not be granted if the request is made more than 45 days after the alleged occurrence. 7 NYCRR § 701.6(g)(1)(i)(a). Accordingly, because the time to both file a grievance and request an exception to the time limit has long expired, and because Plaintiff has not offered any reason for his delay in filing a grievance with respect to his deliberate indifference claim, the claim is dismissed with prejudice.

*See also Felix v. Simon*, 303 F. App'x 21, 22 (2d Cir. 2008) (upholding dismissal of a civil rights action with prejudice where the time permitted for filing a grievance had expired because "dismissal with prejudice, when remedies are no longer available, is required in the absence of any justification for not pursuing such remedies."

17

Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 3, 2019

                                                        *[signature]*
                                         Hon. Andrew T. Baxter
                                         U.S. Magistrate Judge